HOWE, Judge,
Concurring in Part and Dissenting in Part.
¶ 41 I concur in the Majority’s affirmance of Felix’s convictions and sentences for aggravated assault, assisting a criminal street gang, and endangerment. I also agree that the attempted second-degree murder instruction was fundamental error. This Court has repeatedly held that the instruction is erroneous because it does not require that the jury determine whether the defendant intended to kill — the mens rea for attempted second-degree murder — but allows a conviction based on a lesser mens rea — that the defendant merely knew that his conduct would cause serious physical injury. See State v. Ontiveros, 206 Ariz. 539, 541 ¶ 11, 81 P.3d 330, 332 (App.2003); State v. Dickinson, 233 Ariz. 527, 530 ¶ 11, 314 P.3d 1282, 1285 (App.2013); State v. Juarez-Orci, 236 Ariz. 520, 524 ¶ 14, 342 P.3d 856, 860 (App.2015). Even the Criminal Revised Arizona Jury Instructions applicable to Felix’s trial recognized such an instruction is incorrect. See RAJI (Criminal) 3d, § 11.04, cmt. (2011 Rev.) (“There is no crime of attempted second-degree murder if the defendant only knows that his or her action would cause serious physical injury rather than death.”) (citing Ontiveros, 206 Ariz. at 542 ¶ 14, 81 P.3d at 333). Trial courts should cease giving this instruction.
¶ 42 But I cannot agree that the error justifies reversing Felix’s attempted second-degree murder convictions. “It is the rare ease in which an improper [jury] instruction will justify reversal ... when no objection has been made in the trial court.” Dickinson, 233 Ariz. at 530 ¶ 10, 314 P.3d at 1285. Because Felix did not object to the instruction at trial — when the erroneous instruction could (and likely would) have been easily corrected — but waited for appeal to raise it, reversal is justified only if he proves that the error prejudiced him. State v. Henderson, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005). To prove prejudice, Felix must show that “a reasonable, properly instructed jury
*292 could have reached a different result” than did the first jury. Dickinson, 233 Ariz. at 531 ¶ 13, 314 P.3d at 1286 (internal quotation marks and citation omitted). Speculation that the outcome might have been different is not enough to prove prejudice. See State v. Martin, 225 Ariz. 162, 166 ¶ 15, 235 P.3d 1045, 1049 (App.2010) (“Speculative prejudice is insufficient under fundamental error review.”). In evaluating prejudice, we consider “the parties’ theories, the evidence received at trial and the parties’ arguments to the jury.” Dickinson, 233 Ariz. at 531 ¶ 13, 314 P.3d at 1286.
¶ 43 Considering these factors, Felix cannot show that the jurors could have found him not guilty of attempted second-degree murder had they not been misinstructed that knowingly causing serious physical injury satisfied the mens rea requirement of the offense. The evidence leaves no doubt that the shooter intended to kill and not merely to cause serious physical injury. The evidence established that the shooter shot nine times at the victims’ house using a high-powered semi-automatic AK-47 rifle loaded with large caliber high-velocity bullets. The victims’ house — a mobile/modular home — was little protection from the assault; an AK-47 was “only made for going through and destroying things” and would go through “multiple structures and multiple walls.” The shooter also shot at the house from close range, changed positions in front of the house at least once, and fired the rifle at the level of the “chest or stomach area ... more of the lower belt buckle up to about the neck region” — a height most likely to kill. Nothing in the evidence presented at trial would allow the jurors to find that the shooter intended only to cause serious physical injury.
¶ 44 The State never mentioned the serious physical injury language in the jury instruction, and its theory of the ease was solely that Felix was the shooter and that he premeditatedly intended to kill the individuals inside the house. In its opening statement, the State stated that Felix was out to get “revenge” for being beaten and embarrassed and that the evidence would show that he “emerged from the vehicle, walked up to the home, knowing that there was [sic] people still within that home ... walked in front of that home with an AK-47 or an SKS, a high powered assault rifle, and stood before that home, and finished his plan.”
¶ 45 The State maintained this theory in its closing argument after the presentation of the evidence. The State contended that Felix fired nine rounds into the home aimed specifically at the waist to neck level to maximize the chance of a hit:
[T]hese shots weren’t fired randomly into this home. The evidence shows that these shots were fired in such a way as to maximize the chance that someone would be hit. And when we’re talking about a round from a military assault rifle, a hit means— is likely to mean death.
He fired the powerful rifle nine times into the home ... not into the walls of the yard, not into the cars and not into the roof, but waist to neck level into that home. And he did it from a standing position, not a speeding car, and a reasonable inference from that is because he wanted to be able to place his shots; he wanted to be able to control where that automatic rifle was firing. The intent inference, you all know the intent inference. You’ve heard it a thousand times. Actions speak louder than words. Certainly it would be great to have a case in which you had testimony where someone is running up to someone, I’m intending to kill you. But it’s rare that you get cases like that, and the law does not require that a defendant make a formal pronouncement, I’m here to kill everyone in this structure. No. Actions speak louder than words. The facts and the circumstances behind this case show what they were attempting to do, or at the very least, knew what could happen when they did it. Knowingly shooting repeatedly into an occupied home and kill people.
The State never deviated from the argument that Felix intended to kill the persons in the house in retaliation for having been injured and embarrassed by rival gang members in front of his girlfriend and friends. The State’s argument did not implicate at all the instruction’s serious physical injury language.
*293 ¶ 46 Felix’s defense did not implicate the erroneous language, either. He defended the charges by testifying that he was not the shooter and not involved in the shooting. He testified that he was no longer a member of a gang and that at the time of the shooting, he was at a friend’s house and did not leave until 7:00 or 8:00 a.m. In Felix’s closing argument, defense counsel continued this theory of the case and argued that the State had no physical evidence linking Felix to the crimes and suggested that it was more likely that the Okie Town gang members had returned and shot at the house in retaliation for Steve’s having ordered them to leave the party. Felix never admitted that he was the shooter and never argued that he knew only that his actions would cause serious physical injury.
¶ 47 The evidence and arguments of counsel focused only on whether Felix was the shooter and whether the shooter intended to kill. Nothing in the evidence or arguments gave the jurors the occasion to consider whether Felix merely knew that his actions would cause serious physical injury. Because the erroneous part of the jury instruction did not come into play, I find that Felix cannot show any prejudice from the error, and his convictions for attempted second-degree murder should be affirmed.
¶ 48 This is not a case like Ontiveros, where the defendant, Ontiveros, admitted that he shot the victim but denied that he shot him in the face or head, 206 Ariz. at 540 ¶ 3, 81 P.3d at 331, and the State “argued repeatedly” that Ontiveros “intentionally fired the gun with the purpose or intent of causing serious physical injury or death,” id. at 543 ¶ 19, 81 P.3d at 334. In its rebuttal closing argument, the State specifically argued that Ontiveros intended to cause serious physical injury. Id. The evidence and the State’s argument squarely presented the serious physical injury issue to the jury. In this case, however, the evidence does not suggest that Felix intended to use his AK-47 rifle loaded with large caliber high-velocity bullets to cause only serious physical injury, nor did the State and Felix present argument about serious physical injury as the mens rea for attempted second-degree murder. The erroneous part of the instruction was never at issue here.
¶ 49 This ease is little different than Dickinson. There, the evidence showed that the defendant, Dickinson, used his truck to run down and run over his victim, who was riding his bicycle. Id. at 529 ¶¶ 5-6, 314 P.3d at 1284. The State’s theory was that Dickinson tried to kill the victim. Id. at ¶ 6. Dickinson did not testify, nor did he call witnesses, but he asserted a defense of mistaken identify and claimed no involvement. Id. Dickinson argued that someone else ran over the victim and that he was being framed. Id. At no time did Dickinson assert that he hit the victim, but did not intend to or try to kill the victim. Id.
¶ 50 On appeal after conviction for attempted second-degree murder, we agreed with Dickinson that the attempted second-degree murder instruction was fundamental error, id. at 530 ¶ 12, 314 P.3d at 1285, but we nevertheless found that he had not proved prejudice:
The State’s theory was that Dickinson intended to kill the victim; Dickinson’s defense was mistaken identity and that he was not involved in the charged conduct in any respect. Neither of these competing views suggests that Dickinson intended to cause serious injury to the victim (as opposed to kill him), which is the fundamental error in the jury instructions.
Id. at 532 ¶ 22, 314 P.3d at 1287. The case before us should be resolved the same way: The State’s theory was that Felix intended to kill the victims; his defense was mistaken identity (alibi) and that he was not involved in the shooting. Because neither the State’s or Felix’s views suggests that Felix intended to cause only serious physical injury (as opposed to death), the erroneous part of the jury instruction is not implicated, and Felix cannot demonstrate prejudice.
¶ 51 Although the Majority finds otherwise, its reasons are — with respect — unpersuasive. The Majority first finds that the jurors must have considered the instruction’s erroneous language because the trial court read the instruction to them and provided them a written copy of the instruction, and the jurors were presumed to read and follow *294 the instructions. See supra ¶ 16. But this circumstance cannot carry any weight in a prejudice analysis. Every juror in a criminal case has read the instructions and has been given a written copy of them and is presumed in every case to have read and followed the instructions. By that light, every erroneous instruction is prejudicial.
¶ 52 The important consideration is not whether the jurors read the erroneous language of an instruction — I have no doubt that they read and heard the words “or serious physical injury” in the attempted second-degree murder instruction — but whether the evidence and counsels’ arguments required them to consider that language in determining whether Felix committed attempted second-degree murder. The jurors were instructed that as they determined the facts of the ease, “you may find that some of the instructions no longer apply. You must then consider the instructions that do apply....” Because the evidence did not show that Felix shot at the mobile home with an AK-47 only to cause serious physical injury, and neither the State or Felix’s own counsel so argued, the jurors had no occasion to consider the erroneous language.
¶ 53 The Majority also finds that the jurors considered the “or serious physical injury” language because they considered and rejected the State’s argument that Felix acted with premeditation when he intentionally shot at the mobile home. See supra ¶ 19. The jurors’ decision that the State had not proved premeditation does not, however, mean that they considered whether Felix merely knew that his actions would cause serious physical injury. No evidence presented at trial would allow the jurors to find that Felix merely knew that his shooting at the house with an AK-47 rifle loaded with large caliber high-velocity bullets would cause serious physical injury, and the State and Felix’s counsel never discussed serious physical injury in their opening or closing arguments. The fact that Felix’s mental state was at issue does not mean — without more — that the jurors considered the instruction’s erroneous language.
¶ 54 The Majority further argues that the jurors considered the serious physical injury language because Felix’s counsel argued that whoever the shooter was, the shooter did not intend to kill, which put Felix’s mental state at issue. See supra ¶¶ 20-21. In addition to arguing that Felix was not the shooter, Felix’s counsel did indeed argue that the shooter did not intend to kill. He claimed that the shooter shot into areas of the house that had no lights on and shot in a pattern that a shooter would not use to “try and kill everyone in the house.” From this premise, Felix’s counsel argued that the shooter acted recklessly, which meant that the. crime was “not an attempted murder of any kind.”
¶ 55 Although counsel’s argument clearly implicated the mental state of the shooter— whether Felix’s or someone else’s — it did not require the jurors to consider the serious physical injury language. Felix’s counsel never mentioned that language and in fact referred the jurors to an entirely different instruction — the instruction defining recklessness. The erroneous language had no relevance to counsel’s argument. Counsel did not argue that the shooter did not intend or know that the act of shooting would cause serious physical injury. Nothing in counsel’s specific argument on lack of intent offered the jurors an occasion to consider the serious physical injury language.
¶ 56 The Majority concedes that the State did not rely on the serious physical injury language as a theory of guilt at trial and that Felix’s counsel never addressed that language either. The Majority’s finding that the language nevertheless prejudiced Felix rests on its belief that because Felix’s mental state was at issue and the serious physical injury language was listed in the instruction as a possible mental state that would support conviction for attempted second-degree murder, the jurors could have relied on it to convict Felix. But nothing in the evidence or argument of counsel gave the jurors any occasion to consider that language in determining whether Felix was guilty of attempted second-degree murder. The record does not support the Majority’s finding of prejudice.
¶ 57 Although the serious physical injury language of the attempted second-degree murder instruction was undoubtedly errone *295 ous, Felix was entitled to a fair trial, not a perfect one. State v. Dann, 205 Ariz. 557, 565 ¶ 18, 74 P.3d 231, 239 (2003). The erroneous language, however, had no effect on Felix’s trial. Felix approached a thin-walled mobile/modular home with an AK-47 rifle loaded with large caliber high-velocity bullets and shot nine times into the home. No evidence showed that he could have possibly intended only to cause serious physical injury, and neither the State nor Felix’s counsel discussed that as a possibility. Because a reasonable jury would still have convicted Felix of attempted second-degree murder if it had been properly instructed, I find that Felix has not demonstrated that the erroneous language prejudiced him. I therefore dissent from the Majority’s decision ordering that Felix’s attempted second-degree murder convictions be vacated.