NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

WILLIAM EUGENE SHELLEY, *Appellant*.

No. 1 CA-CR 17-0037
FILED 1-11-2018

Appeal from the Superior Court in Mohave County
No. S8015CR201501023
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

**J O H N S E N**, Judge:

¶1        William Shelley appeals his convictions and sentences for felony endangerment, criminal damage and misdemeanor driving with a revoked license.  For the following reasons, we affirm his convictions and resulting sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2        At 80 years old, Shelley normally did not drive his full-size van because the Motor Vehicle Division ("MVD") had revoked his driver's license for failing to retake certain driving tests.  In addition, Shelley was unable to walk and, by his own account, his "hearing's been gone since Korea."  On the morning of July 13, 2015, however, some travelling companions left him and his van in a Kingman drugstore parking lot, and he decided to drive someplace else.

¶3        Upon leaving the drugstore, Shelley pulled up to an intersection, stopped at the stop sign, checked both directions and, when he did not see any traffic coming, entered the intersection to make a left turn.  Immediately after he pulled out, however, a compact sedan travelling at about 35 miles per hour on the cross street struck Shelley's van, rolling the van over and heavily damaging the car's front end, causing it to catch fire.  A bystander pulled the sedan's driver out of the car before fire engulfed it; others pulled Shelley from his van.  Within moments, the sedan was engulfed in flames and was totally consumed before firefighters arrived.

¶4        A grand jury indicted Shelley on single charges of endangerment, a Class 6 felony; criminal damage, a Class 5 felony; and driving with a revoked license, a misdemeanor.  At trial, the State offered evidence that five years before the accident, the MVD had directed Shelley to take a vision test, a written test and a driving test to reinstate his driver's license, and had revoked his license after he failed to do so.  The State argued Shelley was criminally reckless because he knew he was physically incapable of safely driving his van, but did so anyway.

¶5        The jury convicted Shelley of the two felonies, and the court then found him guilty of the misdemeanor and imposed concurrent sentences, the longest of which was two years.  Shelley timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona

Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018), 13-4031 (2018) and -4033(A) (2018).[1]

## DISCUSSION

### A.    Sufficiency of the Evidence.

¶6        Shelley argues insufficient evidence supports his endangerment and criminal damage convictions. We review the sufficiency of the evidence *de novo*. *State v. Miller*, 234 Ariz. 31, 41, ¶ 33 (2013). We will reverse only if no substantial evidence supports the conviction. *State v. Allen*, 235 Ariz. 72, 75, ¶ 6 (App. 2014). Substantial evidence is that which, when "viewed in the light most favorable to sustaining the verdict, would permit a reasonable person to find a defendant guilty beyond a reasonable doubt." *State v. Martinson*, 241 Ariz. 93, 101, ¶ 34 (App. 2016). "Evidence may be direct or circumstantial, but if reasonable minds can differ on inferences to be drawn therefrom, the case must be submitted to the jury." *State v. Palmer*, 229 Ariz. 64, 67, ¶ 11 (App. 2012).[2]

¶7        "Endangerment" is defined as "recklessly endangering another person with a substantial risk of imminent death." A.R.S. § 13-1201(A) (2018). "Criminal damage" is defined as "[r]ecklessly defacing or damaging property of another person." A.R.S. § 13-1602(A)(1) (2018). Both crimes require that a defendant act "recklessly," which is defined in A.R.S. § 13-105(10)(c) (2018):

> "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Endangerment therefore requires proof that one knew that his or her conduct would cause a substantial and unjustifiable risk of imminent death

---

[1]        Absent material revision after the date of an alleged offense, we cite a statute's current version.

[2]        On appeal, Shelley challenges the two felony convictions but raises no argument concerning the misdemeanor.

to another and then consciously disregarded such risk. Criminal damage similarly requires proof of conscious disregard of a substantial and unjustifiable risk that one's conduct will damage the property of another. The conduct must be a gross deviation from that of a reasonable person in the situation.

¶8            The record contains evidence from which a reasonable person could find Shelley guilty of endangerment and criminal damage beyond a reasonable doubt. Although Shelley argues there was insufficient evidence to prove that he acted recklessly in driving, the jury heard that he could not walk without assistance, was hard-of-hearing and had poor vision. Reasonable jurors could infer that, as a result, Shelley was aware he was unable to safely drive a van and that his attempt to do so was a gross deviation from what a reasonable person with his disabilities would do in that situation.

¶9            Shelley argues it is not reasonable to infer that he could not safely drive simply from the fact that he had not taken the tests required to have his driver's license reinstated. He argues the State offered "no evidence of the degree of vision loss, hearing loss, or driving skills loss." But Shelley himself admitted he should not have been driving, testifying, "No, I can't get a driver's license reinstated. I can't see and I can't hear and I got no business driving," adding a moment later that he "can't read or write."

¶10            Further, as to the risk Shelley created, the State presented evidence that the other driver needed a bystander's help to make it out of the sedan only moments before it became engulfed in flames; it was therefore reasonable for the jury to find that Shelley created a substantial risk of imminent death to the victim.

B.    Admissibility of MVD Notices.

¶11            Shelley next argues the superior court erred in admitting a 2010 letter from the MVD advising him that he needed to resubmit to vision testing and take written and practical driving tests to have his license reinstated, and another letter informing him that the MVD had revoked his driver's license because he had failed to take the tests. Because Shelley's attorney did not object to the admission of these letters, our review is limited to fundamental error. *See* Ariz. R. Evid. 103(a)(1); *State v. Butler*, 230 Ariz. 465, 471, ¶ 21 (App. 2012). Fundamental error is error that is fundamental to the case, strips from the defendant a right essential to the defense, and is of such magnitude that the defendant could not have

4

possibly received a fair trial. *Id.* at ¶ 22. The defendant has the burden to establish "that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *Id.* at 472, ¶ 22 (quoting *State v. Smith*, 219 Ariz. 132, 136, ¶ 21 (2008)).

**¶12** Shelley was not prejudiced by the admission of the letters because he testified to the supposedly impermissible inferences he argues the jury might have drawn from the letters. On cross-examination, Shelley admitted he knew the MVD had revoked his driver's license because he had failed to take the vision and driving tests. Although he argues on appeal that he was prejudiced because the jury could infer that he did not take the tests because he could not pass them, on cross-examination he did not dispute that his physical limitations prevented him from driving safely. Indeed, as recounted above, he testified he had "no business driving." Even if Shelley had objected to the introduction of the MVD notices when the State offered them, his later admissions on cross-examination would have constituted a waiver of that objection. *See Miller v. Schafer*, 102 Ariz. 457, 461 (1967) ("The admission of improper evidence is not reversible error if later waived by the objecting party.").

**¶13** The superior court also addressed Shelley's related concerns about relevance and unfair prejudice when it denied Shelley's motion for a directed verdict under Arizona Rule of Criminal Procedure 20. The court found the MVD documents showed Shelley "was aware of a substantial risk and consciously disregarded that risk because he continued to drive, despite the corrective action notice that was sent to him from the motor vehicle division." Relevant evidence is admissible unless, *inter alia*, it is unfairly prejudicial. Ariz. R. Evid. 402, 403. Evidence is relevant if it alters the probability of a consequential fact. Ariz. R. Evid. 401; *Yauch v. Southern Pacific Transp. Co.*, 198 Ariz. 394, 401-02, ¶ 19 (App. 2000). Whether Shelley knew he should not have been driving was a fact bearing on recklessness, and the MVD letters make it more probable that Shelley knew he should not have been driving.

**¶14** Relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice, which is the "undue tendency to suggest decision on an improper basis, such as emotion, sympathy or horror." *State v. Escalante-Orozco*, 241 Ariz. 254, 274, ¶ 48 (2017) (quoting *State v. Mott*, 187 Ariz. 536, 545 (1997)). Here we cannot say that the MVD letters unfairly prejudiced Shelley. In short, the superior court did not err when it admitted the MVD letters, much less fundamentally so.

## C.     Jury Instructions.

**¶15**         Shelley finally argues the superior court erred when it failed to instruct the jury on the culpable mental state of criminal negligence. Shelley did not object to the jury instructions at trial and thus "has forfeited the right to seek relief for all but fundamental, prejudicial error, and we limit our review accordingly." *State v. Juarez-Orci*, 236 Ariz. 520, ___, ¶ 11 (App. 2015). We review jury instructions *de novo* to ensure that they comport with applicable law and are "substantially free from error" when viewed as a whole. *Id.* at ___, ¶ 12.

**¶16**         Shelley argues criminal negligence is a lesser-included culpable mental state of recklessness and thus the superior court erred when it failed to give the jury a criminal negligence instruction. Shelley contends that if the jury had been so instructed it could have found that he was not reckless. He also admits, however, that Arizona has criminalized neither negligent endangerment nor negligent damage to property.

**¶17**         Shelley is correct that criminal negligence is a lesser-included culpable mental state to recklessness, but he offers no authority for the proposition that the court should instruct a jury on negligence when a defendant is charged with endangerment or criminal damage, much less that it should do so *sua sponte*. The court did not err in failing to give such an instruction here. *See State v. James*, 231 Ariz. 490, 492-93, ¶ 8-9 (App. 2013) (reversing conviction for "reasonable apprehension" aggravated assault, a crime requiring proof of intentional conduct, because court instructed jury on knowing and reckless culpable mental states). The instructions the court gave here accurately comported with applicable law.

## CONCLUSION

**¶18**         For the foregoing reasons, we affirm Shelley's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA