NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

v.

CARL WAYNE PRICE, *Appellant*.

No. 1 CA-CR 18-0421
FILED 5-7-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-111244-001
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Grace M. Guisewite
*Counsel for Appellant*

------------------------------

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James P. Beene joined.

------------------------------

**W E I N Z W E I G**, Judge:

¶1        Carl Wayne Price appeals his convictions and sentences for kidnapping, aggravated assault, attempted sexual assault and threatening or intimidating.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        C.F., then 14-years old, walked from her home to a local park in March 2016.  She sat under a tree, inserted her earbuds, closed her eyes and listened to a guided meditation.  She finished around half of the recording when a large man, Price, entered the park and crept behind her. He grabbed her right arm, "yanked," and ordered her to "follow him."  C.F. was startled and then panic stricken as "he started dragging [her] away" to a secluded area behind the park pool.  She screamed.  A skirmish ensued. Price placed his hand over C.F.'s mouth, but she bit him.  Price then shoved her into thorn bushes.  She tumbled to the ground and Price pounced on her.  C.F. struggled to free herself, scratching and biting the man, but he pinned her against the ground.  He forced his hand underneath her pants and underwear, touching just "[a]bove [her] vagina."  She "cross[ed] her legs."  Price became frustrated, asking C.F. for her name and age.  C.F. screamed obscenities in response.  Price groped her breasts, grabbed her neck and choked her, warning her to "[s]hut up" and "[b]e quiet" if she wanted to live.  C.F. blacked out and Price fled the scene.

¶3        C.F. regained consciousness after a short while.  She gathered her belongings, ran home and told her mother what happened.  Her mother called 9-1-1.  Police arrived, collecting C.F.'s clothes and fingernail samples. A forensic nurse later examined C.F. and found numerous abrasions, contusions and signs of strangulation.

¶4        DNA analysis revealed Price's blood on C.F.'s shirt.  Police searched Price and his home, seizing his stained shirt and jeans.  His body bore signs of a struggle, with scratches and bruises on his arms, hands, fingers, stomach and back.  Additional DNA tests showed C.F.'s blood on

Price's shirt and jeans; and more of Price's blood was found on C.F.'s jacket and fingernail clippings.

¶5     The State charged Price with four offenses: (Count 1) kidnapping, a class 2 felony and dangerous crime against children; (Count 2) aggravated assault, a class 6 felony; (Count 3) attempted sexual assault, a class 3 felony and dangerous crime against children; and (Count 4) threatening or intimidating, a class 1 misdemeanor.

¶6     The trial lasted 12 days.  The superior court instructed the jury on the elements of the charged offenses before and after the presentation of evidence (preliminary and final jury instructions).  As such, the jury was twice instructed that attempted sexual assault had three elements, one of which required proof that Price "attempted to intentionally or knowingly engage in sexual intercourse or oral sexual contact with another person." The court also included a "[d]efinitions" section to define various terms, including "[s]exual contact" and, in the final instructions, "[s]exual intercourse."  The court defined "'[s]exual contact" as "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by an object or causing a person to engage in such contact."  It defined "[s]exual intercourse" as "the slightest penetration into the vulva by any part of the body or by any object or masturbatory contact with the penis or vulva."  The court never defined the term "[o]ral sexual contact," which is described in A.R.S. § 13-1401(A)(1) as "oral contact with the penis, vulva or anus," without reference to the "female breast."

¶7     Several witnesses testified during trial, including C.F. and Price.  The court received several exhibits.  The State pressed an attempted sexual intercourse theory.  There was no testimony or evidence that Price's mouth ever touched C.F. or Price tried to orally touch C.F. in any way.  And neither party ever suggested oral contact during closing arguments.

¶8     The jury returned guilty verdicts on all four counts and found aggravating circumstances for each of the three felonies.  The court sentenced Price to time served on count 4; consecutive prison terms of 35 years for count 1, 2 years for count 2, and 15 years for count 3.  Price timely appealed.  We have jurisdiction pursuant to the Ariz. Const. art. 6, § 9, and A.R.S. §§ 13-4031, -4033(A)(1).

## DISCUSSION

¶9     Price challenges the superior court's jury instructions regarding attempted sexual assault.  We review for fundamental error

3

because he did not object to them in the superior court. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). Under fundamental error review, the defendant must demonstrate that an error is fundamental and prejudicial. *Id.* at 142, ¶ 21. An error is fundamental if "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* An error is prejudicial, in turn, if "without the error, a reasonable jury could have plausibly and intelligently returned a different verdict" based on "the entire record, including the parties' theories and arguments as well as the trial evidence." *Id.* at 144, ¶ 31.

¶10 Here, the superior court instructed the jury on the elements of attempted sexual assault, which requires attempted "oral sexual contact," but only defined "sexual contact" in the definition instructions. Price argues the court's instructions amounted to fundamental error and claims he suffered prejudice because the jury might have convicted him of attempted sexual assault for attempting "sexual contact," rather than "oral sexual contact."

¶11 Even assuming error, Price does not "prove prejudice" and instead relies on "speculation." *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (quotation omitted). The superior court properly instructed the jury on the required elements of attempted sexual assault, both verbally and in writing, including that the defendant must have attempted "sexual intercourse or *oral* sexual contact." (Emphasis added.) Although the instructions included "sexual contact" among eight defined terms in a "definitions" section, the court never instructed the jury that Price could be convicted of attempted sexual assault if he attempted to have only "sexual contact" with another.[1] There was no evidence the jury misunderstood the instructions. *See State v. Bass*, 198 Ariz. 571, 576-77, ¶¶ 16-17 (2000) (finding no reversible error where there was "no evidence that the jury was misled" by the erroneous instruction). And we presume the jury followed the accurate definition of attempted sexual assault. *State v. Nelson*, 229 Ariz. 180, 190, ¶ 45 (2012) ("We presume jurors follow their instructions.").

¶12 At most, the jury could have misunderstood that attempted sexual assault was proven if the defendant attempted oral contact with the victim's breast or attempted to cause another to engage in sexual contact

---

[1] The superior court also instructed the jury as follows: "As you determine the facts, however, you may find that some instructions no longer apply. You must then consider the instructions that do apply, together with the facts as you have determined them."

with the victim, but the trial included no evidence or argument that Price attempted any oral contact or attempted to cause anyone to engage in sexual contact. Indeed, the State only argued that Price attempted to have sexual intercourse with C.F. *See supra* ¶ 7. Price concedes the jury was properly instructed on the meaning of "sexual intercourse," and the record includes sufficient evidence to support the State's theory. Price suffered no prejudice from the erroneous inclusion of a "sexual contact" definition in the jury instructions.[2]

## CONCLUSION

¶13        We affirm because Price suffered no prejudice from the error.



---

[2]        Price receives no help from *State v. Juarez-Orci*, 236 Ariz. 520 (App. 2015), *State v. James*, 231 Ariz. 490 (App. 2013), or *State v. Ontiveros*, 206 Ariz. 539 (App. 2003). Unlike here, the juries in those cases heard evidence that could have supported an uncharged theory. *See Juarez-Orci*, 236 Ariz. at 525-26, ¶¶ 15-17, 23; *James*, 231 Ariz. at 493-94, ¶¶ 9, 18; *Ontiveros*, 206 Ariz. at 541-43, ¶¶ 10-11, 18.