NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RALPH CARR, *Appellant.*

No. 1 CA-CR 16-0088
FILED 9-5-2017

Appeal from the Superior Court in Maricopa County
No. CR2012-010243-001 DT
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

The Poster Law Firm, PLLC, Phoenix
By Rick D. Poster
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Peter B. Swann and Judge Maria Elena Cruz joined.

---

H O W E, Judge:

¶1        Ralph Carr appeals his convictions and sentences on 11 counts of sexual abuse, class 3 felonies and dangerous crimes against children, and three counts of sexual abuse, class 5 felonies. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Carr worked as a horse trainer and riding teacher at a northwest Phoenix horse ranch. Carr's students ranged in age, with some as young as eight years old. In March 2006, one of Carr's students, whose mother noticed had lost her excitement about going to her classes at Carr's ranch, confessed to her parents that Carr had touched her breasts multiple times. The parents called the police, who then sent a Maricopa County Sheriff's Deputy to speak with the family. Two years later, another student, who had likewise suddenly lost interest in attending her classes, told her mother and police that Carr had touched her breasts multiple times.

¶3        Approximately nine months after the second report, the Maricopa County Sheriff's Office assigned a detective to investigate the claims. Soon after interviewing both girls, the Sheriff's Office issued a press release with Carr's information and the allegations made about him, asking if any other children had similar experiences with him and requesting that they report any additional incidents of abuse to them. This call for information led to an additional report from another female student that Carr had inappropriately touched her. Eventually, several girls came forward stating that Carr inappropriately touched them while taking classes with him or working with him. Each allegation involved Carr either touching the child's breasts or buttocks. Consequently, the State charged Carr with multiple counts of sexual abuse for incidents occurring between 2002 and 2009.

¶4        Carr's first trial began in October 2012, on an indictment alleging nine counts of sexual abuse against four different victims. The jury

was unable to reach a verdict on any of the offenses. The State then moved to dismiss the case without prejudice, which the trial court granted. The State subsequently indicted Carr for 16 felonies: 15 counts of sexual abuse and one count of aggravated assault for touching one of his female students "with the intent to injure, insult, or provoke her." The State alleged that the alleged incidents of sexual abuse occurred between 2002 and 2009 on victims ranging in age from 9 to 15 years old.

¶5          Before the court set trial on the current indictment, Carr moved to sever each of the counts. The court held an evidentiary hearing on Carr's motion, at which it considered whether evidence of the offenses would be admissible as "other acts" under Arizona Rule of Evidence ("Rule") 404 if the offenses were tried separately. To show that evidence of the offenses would be admissible because they showed a character trait giving rise to an aberrant sexual propensity, the State presented expert testimony from a psychologist relating to Carr's emotional propensity and opining on his "aberrant behavior." Carr called his own expert witness to refute the State's evidence and the State's expert's conclusions. The expert specifically criticized the State's expert's methodology in reaching his conclusion as unreliable because it could not be verified and reproduced by other experts and did not include estimated error rates.

¶6          Relying in part on testimony at an evidentiary hearing and on testimony from the first trial, the trial court denied Carr's motion on the first day of his February 2015 trial. The court explained in a lengthy minute entry that each of the offenses were "without question" of the same or similar character. Additionally, the court found that the evidence would be cross-admissible at separate trials to show intent and absence of mistake or accident under Rule 404(b) and to show an aberrant sexual propensity under Rule 404(c). In doing so, the trial court agreed with the State's expert's findings, stating that it "reache[d] the same ultimate conclusion that a person who engaged in the conduct as alleged by the State has a character trait that would give rise to aberrant sexual behavior." The court also found that the evidentiary value of the other offenses would not be substantially outweighed by the danger of unfair prejudice to Carr. After a 19-day trial, the jury acquitted Carr of the aggravated assault offense and one count of sexual abuse, but could not reach a verdict on the remaining counts. Accordingly, the trial court set a re-trial on the remaining 14 counts of sexual abuse.

¶7          Carr's re-trial began in October 2015. Each of the female victims testified that when they were young girls, Carr repeatedly reached from behind them and touched, rubbed, or pinched their breasts. They also

testified that the incidents occurred after they started taking private horseback riding lessons from Carr, and in one victim's case, at a horse stable where she worked. The conduct occurred over a period of seven years, with a gap between incidents of at most 27 months—which began in 2009.

¶8          On the second day of testimony, Carr's counsel reported that at the end of the lunch break, she and her assistant had "started to walk into the women's restroom on this floor and [] immediately could hear and see [a victim witness] and her mother there in the bathroom already talking." Defense counsel told the court that they waited until the two had left the bathroom, and when they entered, "saw one of the jurors who had been in the bathroom apparently the entire time" while they had been waiting outside. She noted, however, that they "couldn't hear who was talking or what was being said." She said that she was not sure, but thought that it might have been juror number 11 in the bathroom, and described her hair and what she was wearing.

¶9          At the end of the day, the court excused all jurors except juror number 1, who had been identified as juror number 11 during jury selection, and asked her, "at any point today, have you been in the restroom or any area in the courthouse where you have overheard the lawyers or a witness speaking about this case in any way?" The juror responded, "no," then added that she was in the restroom when one of the victim witnesses and her mother were as well. She stated that at least one lawyer came into the restroom as they were leaving, but that "they weren't talking about the case at all." The court thanked the juror and dismissed her. Carr did not object at any time or suggest to the court that it was questioning someone other than the person Carr's counsel saw in the restroom.

¶10          At the close of evidence, the trial court instructed the jury to consider each offense separately and advised that each must be proved beyond a reasonable doubt. The trial court *sua sponte* also gave a supplemental Rule 404 limiting instruction after closing arguments to ensure "there is further clarity to the jury on how they can use the other counts as evidence." Before dismissing the jury to deliberate, the court designated two jurors as alternates—one of which was juror number 1, whom the court had questioned earlier regarding the alleged restroom conversation. After deliberating, the jury convicted Carr of the charged offenses. The court sentenced Carr to a total of four years in prison, followed by lifetime probation and ordered him to register as a sex offender. Carr timely appealed.

## DISCUSSION

### 1. Denial of Severance

¶11            Carr argues first that the trial court abused its discretion by denying his motion to sever the charges involving the different victims because the evidence involving each victim was too remote and not cross-admissible.[1] Generally, we review a trial court's denial of a motion to sever for an abuse of discretion. *State v. Blackman*, 201 Ariz. 527, 537 ¶ 39 (App. 2002). When a defendant fails to properly renew his denied motion to sever at or before the close of evidence, however, this Court reviews for only fundamental error. Ariz. R. Crim. P. 13.4(c); *State v. Gutierrez*, 240 Ariz. 460, 464–65 ¶ 12 (App. 2016). To prevail under fundamental error review, Carr must establish that fundamental error occurred and that it prejudiced him. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20 (2005). Because Carr failed to renew his pretrial motion at or before the close of evidence and because all of the charged offenses were of the same or similar character, the court did not err, much less fundamentally err, here.

¶12            In Arizona, the State may join charged offenses if they are "of the same or similar character." Ariz. R. Crim. P. 13.3(a)(1). If a defendant wishes to move for severance, he must do so at least 20 days before trial and, "if denied, renewed during trial at or before the close of the evidence." Ariz. R. Crim. P. 13.4(c). Failure to properly move or renew a motion to sever constitutes waiver. *Id.* This "prevents a defendant from strategically refraining from renewing his motion, allowing a joint trial to proceed, then, if he is dissatisfied with the final outcome, arguing on appeal that severance was necessary." *State v. Flythe*, 219 Ariz. 117, 120 ¶ 9 (App. 2008).

¶13            Contrary to Carr's argument, he failed to properly renew his motion at or before the close of evidence and therefore he waived his severance argument. Carr moved to sever before the second trial, which the trial court denied upon finding that the offenses were of the same or similar character and the evidence was cross-admissible at separate trials to show intent and absence of mistake or accident under Rule 404(b) and to show an aberrant sexual propensity under Rule 404(c). Carr did not renew the severance motion before or during the third trial — the trial at issue in this appeal. We reject Carr's argument that Arizona Rule of Criminal Procedure

---

[1]      Carr filed an addendum to his appellate counsel's reply brief requesting that this Court consider his additional argument on this issue. But Carr is not entitled to hybrid representation, and thus his addendum will not be considered. *See State v. Dixon*, 226 Ariz. 545, 553 ¶ 39 (2011).

13.4(c) does not require a defendant to move for severance before and during each trial. The rule by its plain terms requires that the motion be filed at least 20 days before trial and "renewed during trial at or before the close of evidence." Ariz. R. Crim. P. 13.4(c). By failing to renew his motion to sever at least 20 days before, and "at or before the close of evidence," in this third trial, Carr waived all but fundamental error review. *See State v. Gonzalez*, 181 Ariz. 502, 508 (1995) ("Gonzalez moved to sever before the start of the first trial, but waived this issue by failing to renew his motion during the second trial or at the close of the evidence.").

**¶14**　　　　Because Carr has waived his severance argument, he must show that the trial court erred by denying his motion to sever, that the error was fundamental, and that the error prejudiced him. *See State v. Juarez-Orci*, 236 Ariz. 520, 523 ¶ 11 (App. 2015). But Carr has not shown that the court committed any error. A defendant is entitled to sever offenses of the same or similar character "unless evidence of the other . . . offenses would be admissible under applicable rules of evidence if the offenses were tried separately." Ariz. R. Crim. P. 13.4(b). As relevant here, other acts evidence is admissible under Rule 404(b) if the evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Additionally, evidence of other acts may be admissible under Rule 404(c) if the evidence is relevant to show that the defendant has a character trait giving rise to an aberrant sexual propensity to commit the charged offense. Before admitting evidence under either Rule 404(b) or (c), the trial court must make specific findings. First, the court must find by clear and convincing evidence that the defendant committed the other act. *State v. Goudeau*, 239 Ariz. 421, 444 ¶ 59 (2016). Second, the court must find that the "commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense." *Id.* Third, the court must find that the evidentiary value of proof of the other act is not substantially outweighed by the danger of unfair prejudice, confusion, or other factors considered in Rule 403. *Id.* In making its final determination, the trial court must also consider the listed factors in Rule 404(c)(1)(C)(i)–(viii). *Id.*

**¶15**　　　　The trial court did not err, much less fundamentally err, by failing to sever the charges involving different victims because, contrary to Carr's argument on appeal, the acts against each victim were of similar character and would have been cross-admissible under Rule 404(c) at separate trials. First, each of the 14 counts of sexual abuse was of the same or similar character. Each of the female victims testified that when they were between 10 and 15 years old, Carr repeatedly reached from behind

them and touched, rubbed, or pinched their breasts. They testified that the incidents occurred after they started taking private horseback riding lessons from Carr, and in one victim's case, at a horse stable where she worked. The conduct occurred over a period of seven years, with a gap between incidents of at most about two years.

**¶16**        Second, evidence of each of the offenses would have been admissible under the applicable rules of evidence if the offenses were tried separately. The witnesses' accounts provided clear and convincing evidence that Carr committed each of the acts. *See State v. Vega*, 228 Ariz. 24, 29 n.4 ¶ 19 (App. 2011) ("The testimony of the victim is a sufficient basis on which to conclude by clear and convincing evidence that the incident occurred."). These facts also provided a reasonable basis to conclude that commission of each act permitted an inference that Carr had an aberrant sexual propensity, and thus to admit the evidence at separate trials under Rule 404(c) without any expert testimony. *See* Ariz. R. Evid. 404 (c) cmt. to 1997 amendment (eliminating the requirement of expert testimony in all cases of remote or dissimilar acts).[2]

**¶17**        Finally, the danger of unfair prejudice would not substantially outweigh the other acts' evidentiary values. The acts were not remote from each other. *See State v. Benson*, 232 Ariz. 452, 459 ¶ 15 (2013) (concluding that two years and nine months' interval between charged offenses was not too remote); Ariz. R. Evid. 404(c) cmt. to 1997 amendment (stating that the remoteness factor is not subject to a "bright line test").

---

[2]        Carr argues that the trial court erred by denying his motion to sever before the second trial because it improperly relied on an expert opinion that the acts demonstrated an aberrant sexual propensity. To any extent that the trial court's ruling before the second trial is relevant to our inquiry regarding whether the court erred by failing to *sua sponte* sever the counts during the third trial, Carr's argument is misplaced. Carr's expert's criticism that the State's expert's methodology was unreliable because it did not include error rates and could not be verified and reproduced by other experts did not render it inadmissible. *Cf. State v. Buccheri-Bianca*, 233 Ariz. 324, 332 ¶ 28 (App. 2013) (rejecting a similar argument relating to Rule 702). Moreover, in its lengthy minute entry, the trial court agreed with the State's expert's findings, notwithstanding Carr's expert's criticisms, and stated that it "reache[d] the same ultimate conclusion that a person who engaged in the conduct as alleged by the State has a character trait that would give rise to aberrant sexual behavior."

Carr's arrest on the original charges in August 2009 explains the absence of any allegations of sexual abuse after 2009. The evidence of each of the acts accordingly would have been cross-admissible at separate trials, and the court did not err, much less fundamentally err, by not severing the offenses.

**¶18**        Moreover, to challenge the denial of a severance, a defendant "must demonstrate compelling prejudice against which the trial court was unable to protect." *State v. Miller*, 234 Ariz. 31, 38 ¶ 18 (2013). Carr cannot demonstrate the necessary compelling prejudice because the jury was instructed to consider each offense separately and advised that each must be proven beyond a reasonable doubt. *See id.* (concluding that no compelling prejudice occurred in light of these jury instructions). The trial court also gave a supplemental limiting instruction after closing arguments, clarifying the use of each count as evidence, further minimizing any potential prejudice from the joint trial. Thus, Carr has failed to demonstrate that the trial court fundamentally erred, to his prejudice, in failing to sever the counts involving different victims.

### 2. Juror Taint in Second Trial

**¶19**        Carr argues next that he was prejudiced during the second trial, in which the jury acquitted him on two counts and was unable to reach a verdict on 14 counts, because the jury was exposed to media coverage and a juror's personal prejudice. But because none of Carr's convictions resulted from a trial in which any of the jurors from the second trial sat, any claim that these jurors engaged in misconduct is moot. An issue becomes moot when "as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties." *Hormel v. Maricopa Cty.*, 224 Ariz. 454, 460 ¶ 25 (App. 2010). Because this claim would have no effect on the parties, and does not present any issue of public importance or an issue likely to reoccur, we decline to address it. *Cf. Henderson*, 210 Ariz. at 565 n.2 ¶ 10 (2005) (providing that a reviewing court generally does not address moot issues).

### 3. Juror Exposure to Extrinsic Evidence

**¶20**        Carr argues finally that the trial court erred by not declaring a mistrial. As a preliminary argument, Carr claims that the trial court questioned the wrong juror upon learning that one or more of the jurors in the third trial had overheard a witness and her mother talking in the bathroom during the break. Because Carr did not move for mistrial or otherwise object when the trial court was questioning the juror, we review for only fundamental error. *Henderson*, 210 Ariz. at 568 ¶ 22.

**¶21**    A declaration of mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570 ¶ 43 (2003). Juror misconduct warrants a new trial if the appellant shows actual prejudice or prejudice may fairly be presumed. *See State v. Davolt*, 207 Ariz. 191, 208 ¶ 58 (2004). "In a criminal case, prejudice may be presumed from any private communication, contact or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury." *Id.*

**¶22**    The trial court did not question the wrong juror. The record shows that the trial court questioned juror number 1. This juror had been identified during jury selection as juror number 11—the number that defense counsel thought "might be" the number of the juror she had seen in the bathroom. Juror number 1 told the court and the parties that she had been in the bathroom with the witness and her mother and saw defense counsel and her associate come in as she was leaving, further confirming that she was the juror that defense counsel had seen in the bathroom. Defense counsel made no objection when the court questioned juror number 1, implicitly confirming that this juror matched the description defense counsel had given, and was the juror whom she had seen in the bathroom. On these facts, the court had no reason to believe that it was questioning the incorrect juror.

**¶23**    Having questioned the correct juror, nothing in the juror's statements shows that the juror heard anything related to the case, so the trial court did not err by failing to declare a mistrial. Defense counsel told the court that she could not tell who was speaking or what that person was saying. When questioned by the court, the juror said that the victim and her mother "weren't talking about the case at all." Finally, Carr cannot show prejudice because this juror was designated as an alternate, and did not deliberate. For all these reasons, Carr has failed to establish fundamental error.

**CONCLUSION**

**¶24**      For the foregoing reasons, we affirm Carr's convictions and sentences.

