297 P.3d 182

**STATE of Arizona, Appellee,**

v.

**Lyndon Garwin JAMES, Appellant.**

**No. 1 CA–CR 09–0052.**

Court of Appeals of Arizona, Division 1, Department C.

March 21, 2013.

---

Thomas C. Horne, Arizona Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Division and Linley Wilson, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Treasure VanDreumel, Phoenix, Attorney for Appellant.

## OPINION

THUMMA, Judge.

¶ 1 Lyndon Garwin James appeals his conviction and sentence to life in prison for "reasonable apprehension" aggravated assault. The issue on appeal is whether jury instructions setting forth an offense that does not exist under Arizona law—knowing or reckless "reasonable apprehension" aggravated assault—constitute fundamental, prejudicial error. Under the fact-intensive inquiry mandated by *State v. Henderson*, 210 Ariz. 561, 115 P.3d 601 (2005), James has shown fundamental error resulting in prejudice. Accordingly, the conviction and sentence are vacated and this matter is remanded for a new trial.

## FACTS AND PROCEDURAL HISTORY[1]

¶ 2 James was charged with armed robbery, a Class 2 dangerous felony, and "reasonable apprehension" aggravated assault, a Class 3 dangerous felony. The aggravated

---

1. On appeal, this court considers the evidence in the light most favorable to sustaining the conviction and resolves all reasonable inferences against James. *State v. Karr*, 221 Ariz. 319, 320, ¶ 2, 212 P.3d 11, 12 (App.2008).

assault charge alleged James intentionally placed the victim in reasonable apprehension of imminent physical injury using a deadly weapon or dangerous instrument.

¶ 3 The evidence admitted at trial included a surveillance video, testimony by several witnesses (including James) and a recording of a police interview of James. The evidence showed that James and an accomplice removed a shopping cart filled with items from a supermarket without paying for the items. Two employees followed James and his accomplice out of the supermarket; one employee grabbed the accomplice while the other recovered the cart and used it to pin the accomplice against a wall.

¶ 4 James initially walked away from the encounter but then started walking back toward the employees. When James was several feet from the shopping cart that separated him from the employees, he pulled out a knife with a six-inch curved blade. James lunged toward one employee and pointed the knife at him "in a threatening manner ... like he was getting ready to stab it at us." The employee struggling with the accomplice released the accomplice, testifying he feared for his life and was afraid he "was going to get stabbed." James and his accomplice then fled. No one suffered any physical injury.

¶ 5 During the police interview, James admitted he was involved, but said he pulled out the weapon[2] because he wanted a group of people in the area to leave him alone. At trial, James testified that he "was drunk," was "panicked" by a group of people advancing toward him when he "got scared" and pulled out the knife. James added he "felt like I was going to be apprehended" and "didn't want nobody to mess with me at all.... I just wanted to leave."

¶ 6 As relevant here, the facts at trial were largely undisputed. James did not dispute that he was in the area, that he interacted with the employees or that he pulled out a

knife. James' defense was that he was startled and did not intend to place anyone in fear or apprehension.

¶ 7 The jury deadlocked on the armed robbery and lesser included attempted armed robbery charge but convicted James of "reasonable apprehension" aggravated assault. The jury, however, found the aggravated assault was not a dangerous offense. See Ariz. Rev. Stat. (A.R.S.) § 13–105(13) (as applicable here, defining "dangerous" as "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument").[3] Given James' prior criminal history and finding the conviction was for a serious offense, the court sentenced James to life in prison without the possibility of release until he serves 25 years. See A.R.S. § 13–604(S) (2006) (currently codified at A.R.S. § 13–706). James timely appealed, and this court allowed the parties to file supplemental briefs addressing the issue of fundamental error. This court has jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12–120.21(A)(1), 13–4031 and –4033.

## DISCUSSION

¶ 8 For the aggravated assault charge, the indictment alleged that James, while using a knife and/or screwdriver, a deadly weapon or dangerous instrument, "intentionally placed [the victim] in reasonable apprehension of imminent physical injury." In both preliminary and final instructions, however, the jury was told that assault requires proof that James "[i]ntentionally, *knowingly or recklessly* put another person in reasonable apprehension of imminent physical injury." (Emphasis added.) "Reasonable apprehension" assault, however, can be committed only by "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury;" under the statute,

2. Although admitting he owned a knife with a curved blade, James initially insisted he pulled out a screwdriver "sharpened to a point like an ice pick," a weapon he agreed was capable of killing another person. During closing argument, however, James conceded the weapon was a knife.

3. Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

one cannot be convicted for doing so knowingly or recklessly. A.R.S. § 13–1203(A)(2).

¶ 9 Instead of requiring the State to prove that James "intentionally" placed the victim in reasonable apprehension, the jury instructions allowed a conviction if the State showed James knowingly or recklessly did so. Thus, the jury instructions effectively lessened the State's burden by allowing a conviction upon proof of a less culpable mental state and also instructed on an offense that does not exist under Arizona law (i.e., knowing or reckless "reasonable apprehension" aggravated assault).

¶ 10 The origin of the erroneous jury instructions is unclear. Neither party filed proposed jury instructions. The record suggests that the State may have asked the court to use jury instructions it had submitted in another case.[4] There is, however, no suggestion that James requested the erroneous instructions, meaning the invited error doctrine does not apply. *State v. Logan*, 200 Ariz. 564, 565–66, ¶ 9, 30 P.3d 631, 632–33 (2001) (noting "[i]f an error is invited, we do not consider whether the alleged error is fundamental").

¶ 11 The record is clear that neither party objected to the erroneous instructions, meaning the review on appeal is for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005); Ariz. R.Crim. P. 21.3(c) cmt. Accordingly, James "bears the burden to establish that '(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice.'" *State v. Bearup*, 221 Ariz. 163, 168, ¶ 21, 211 P.3d 684, 689 (2009) (quoting *State v. Smith*, 219 Ariz. 132, 136, ¶ 21, 194 P.3d 399, 403 (2008), and citing *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607).

¶ 12 The State correctly concedes that the instructions given, by including "knowingly or recklessly" as a permissible mental state

for "reasonable apprehension" aggravated assault, were error.

¶ 13 Error is fundamental if a defendant shows "that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Henderson*, 210 Ariz. at 568, ¶ 24, 115 P.3d at 608. This court has stated that instructing a jury on a non-existent theory of criminal liability is fundamental error. *See State v. Zinsmeyer*, 222 Ariz. 612, 623, ¶ 27, 218 P.3d 1069, 1080 (App. 2009); *State v. Ontiveros*, 206 Ariz. 539, 542, ¶ 17, 81 P.3d 330, 333 (App.2003); *State v. Rutledge*, 197 Ariz. 389, 392 n. 7, ¶ 12, 4 P.3d 444, 447 n. 7 (App.2000). Given the case-specific nature of the inquiry, however, James must show the error was fundamental in light of the facts and circumstances of this case, recognizing that "the same error may be fundamental in one case but not in another." *State v. Bible*, 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993).

¶ 14 James testified at trial that he displayed a weapon out of panic, never pointed the weapon at the victim and that he "just wanted to leave." James argued in closing that he was too far away to make contact with the victim, was "not intending to place any fear or apprehension into" anyone and just "want[ed] to be left alone." On this record—in which evidence and argument squarely placed James' mental state at issue for acts that were largely undisputed—the incorrect mental state in the jury instructions went to the foundation of James' case (that he lacked the requisite intent) and took from him a right essential to his defense (that the State failed to prove beyond a reasonable doubt that James intentionally put the victim in reasonable apprehension of imminent physical injury). *See Henderson*, 210 Ariz. at 568, ¶ 24, 115 P.3d at 608. Given the facts and circumstances of this case, because the error was of such magnitude that James

---

4. Aggravated assault is an assault with an aggravating circumstance. A.R.S. § 13–1204(A). Assault can be committed in three different ways, depending upon whether there is physical injury, reasonable apprehension of imminent physical injury or improper touching. A.R.S. § 13–1203(A)(1)–(3). There are more than 20 different

aggravating circumstances that can apply to at least one type of assault. A.R.S. § 13–1204(A). Accordingly, jury instructions for aggravated assault are extraordinarily case-dependent and instructions that are appropriate in one case can be reversible error in another, depending upon how the crime is charged.

could not have received a fair trial, the erroneous jury instructions constitute fundamental error. *See id.*

¶ 15 Even fundamental error does not require reversal absent a showing by the defendant of resulting prejudice. *Id.* at 567–68, ¶ 20, 115 P.3d at 607–08. Prejudice under fundamental error review is a fact-intensive inquiry and varies "depending upon the type of error that occurred and the facts of a particular case." *Id.* at 568, ¶ 26, 115 P.3d at 608. Given the fundamental error in the jury instructions, to show prejudice, James must show that a reasonable jury "could have reached a different result" had the jury been properly instructed. *Id.* at 569, ¶ 27, 115 P.3d at 609. The jury instructions are evaluated in the context of case-specific factors, including the evidence at trial, the defense offered and the parties' arguments to the jury. *See State v. Valverde*, 220 Ariz. 582, 586, ¶ 16, 208 P.3d 233, 237 (2009); *Ontiveros*, 206 Ariz. at 542–43, ¶¶ 18–19, 81 P.3d at 333–34.

¶ 16 As noted above, while the facts at trial largely were undisputed, the proper inferences from those facts (including, in particular, James' mental state) were hotly contested. James testified that he did not pull the knife out toward the victim, did not point the knife at the victim or approach the victim with the knife, did not use the knife in a stabbing motion, never came within striking distance of the victim and never said anything to the victim. James also testified that he did not intend to place anyone in fear or apprehension. James' primary defense was that the State had not proven guilt beyond a reasonable doubt, focusing largely on his mental state. Thus, unlike defenses of mistaken identity, alibi or nonuse of a weapon, James' defense squarely implicated the applicable fundamental error (i.e., the mental state required for a conviction). *See Henderson*, 210 Ariz. at 569, ¶ 27, 115 P.3d at 609; *Valverde*, 220 Ariz. at 586, ¶¶ 16–17, 208 P.3d at 237 (finding no prejudice because, in context of argument, error in instructions suggested "an interpretation that would have

helped rather than harmed [defendant]"); *cf. Ontiveros*, 206 Ariz. at 542–43, ¶¶ 18–19, 81 P.3d at 333–34 (reversing on fundamental error grounds, even where defendant claimed he did not commit acts alleged, in light of trial evidence and State's argument focusing on erroneous mental state in jury instructions).

¶ 17 Closing arguments did not alleviate the error. It is true that, on one occasion, the State argued that James "intentionally place[d] both [employees] in immediate-in apprehension of immediate physical injury" by pulling out a knife. On several other occasions, however, the State's closing asked the jury to infer James' mental state from his actions, not distinguishing between the legally-required mental state ("intentionally") and the erroneous mental states in the instructions ("recklessly or knowingly").[5] By contrast, in closing, James argued he was "not intending to place any fear or apprehension into" the victim, was "not focused on [the victim] anyway" and simply wanted "to get out of [t]here." Thus, the closing arguments did not alleviate the prejudice from the fundamental error of allowing a "reasonable apprehension" aggravated assault conviction for something less than intentional conduct. *See Ontiveros*, 206 Ariz. at 543, ¶ 19, 81 P.3d at 334 (noting State's closing argument, which focused on intent, "did not help to alleviate the error in the instruction").

¶ 18 Given the conflicting evidence regarding James' mental state (providing a sufficient basis for the jury to find either intentionally or a lesser mental state of knowingly or recklessly), as well as James' defense and the parties' arguments, it is unknowable whether the jury found James intentionally placed the victim in reasonable apprehension of imminent physical injury (which would properly support the conviction) or did so knowingly or recklessly (which is not a criminal offense under Arizona law). Given the facts and circumstances of this case, a reasonable jury "could have reached a different result" had the jury properly been instructed on the requisite mental state for "reasonable apprehension" aggravated assault. *Henderson*, 210 Ariz. at 569, ¶ 27, 115 P.3d at

---

5. The jury instructions separately defined "intentionally," "knowingly" and "recklessly," and instructed the jury that James' intent "may be

inferred from all the facts and circumstances disclosed by the evidence." *See also* A.R.S. § 13–105(10)(a)(c).

609; *see also State v. Williams,* 154 Ariz. 366, 368, 742 P.2d 1352, 1354 (1987) (finding, given facts and circumstances of case, "[w]here the effect of the incorrect instruction lessens the state's burden of proof, the error is harmful") (citing cases). Accordingly, James has shown prejudice resulting from the fundamental error.

### CONCLUSION

¶ 19 James' aggravated assault conviction and sentence are vacated and this matter is remanded for a new trial.

CONCURRING: PHILIP HALL, Presiding Judge, and PETER B. SWANN, Judge.