NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TOM ARTHUR BITHELL, *Appellant.*

No. 1 CA-CR 15-0265
FILED 9-19-2017

Appeal from the Superior Court in Maricopa County
No. CR2012-121197-002
The Honorable Erin Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

**T H O M P S O N**, Judge:

¶1 Appellant, Tom Arthur Bithell, appeals his conviction for one count of burglary in the third degree, a class 4 felony, and the accompanying sentence of 2.25 years. Finding no reversible error, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2 Around 7:00 p.m. one evening in late April 2012, while patrolling, Phoenix Police Lieutenant K. Mitchell observed Bithell throw tires from the used tire shed (or "dead bin") at a Discount Tire store into his truck. The Lieutenant then saw Bithell throw tires back out of his truck into the shed. She approached Bithell to speak with him, and he stated that he did not have permission to take tires from the shed. He claimed that he threw two tires out of his truck "[b]ecause they were not good tires." Four tires remained in Bithell's truck.

¶3 Officer N. Yahrmarkt subsequently arrived on scene and also spoke with Bithell. Bithell told her the store's manager had given his friend "Bob Shea" permission to pick tires from the shed. Bithell did not know the manager's name and Bob was not at the scene. He mentioned that he was at the shed "with Bob to pick up tires," and that he was using his truck because Bob's truck had died. Bithell claimed that Bob had gone down the street to buy something to eat. When Officer Yahrmarkt suggested they wait for Bob to come back, Bithell postulated that Bob would probably not come back due to the police presence. Officer Yahrmarkt and another officer, Officer Micak, arrested Bithell and read him his *Miranda*[1] rights.

¶4 After Bithell was arrested, Yahrmarkt asked him who owned the four tires that were still in his truck, and Bithell claimed that Bob owned them. He said "they were going to put them back because [Bob thought] they were bad tires." Bithell remarked that he was helping Bob put the tires

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

back into the shed in exchange for $25.00 and dinner. He stated that "he was trying to make a living."

¶5    At trial, Bithell testified that the two tires the Lieutenant observed him throw into the back of his truck were tires that he had erroneously thrown into the shed. Discount Tire's store manager also testified. The manager stated that neither Bithell nor a "Bob Shea" had ever worked for him and neither had permission to take tires from the shed.

¶6    The store manager further testified that only four individuals had key access to the shed—he, two other managers, and a tire company (Lakin) that Discount Tire contracted with to remove tires from the "dead bin". He claimed that they frequently had to change the locks on the bin because it "was consistently getting broken into." He also testified that on the day Bithell was observed taking out and putting tires in the bin, it should have been closed and locked. He affirmed that it would have been "unusual" for the bin's door to have been left opened.

¶7    A jury found Bithell guilty as charged. The trial court found Bithell had two prior felony convictions (aggravated DUI in 2001, and possession of drug paraphernalia in 2005), and sentenced him to a minimum term of 2.25 years in the Arizona Department of Corrections. Bithell filed an untimely appeal, but was granted leave to file a delayed notice of appeal, which he timely filed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) (2016), 13-4031 (2010), and -4033(A) (2010).[2]

## DISCUSSION

¶8    On appeal, "[w]e view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2, 340 P.3d 1110, 1112 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495, 924 P.2d 497, 499 (App. 1996)).

## I.    Sufficiency of the Evidence

¶9    Bithell argues the state failed to provide sufficient evidence of intent to support his third-degree burglary conviction. His argument fails.

---

[2]    Absent changes material to this decision, we cite a statute's current version.

¶10        To establish the offense of burglary in the third-degree, the state was required to show Bithell: (1) entered or remained "unlawfully in or on a nonresidential structure;" and (2) did so "with the intent to commit any theft or any felony therein." A.R.S. § 13-1506(A)(1) (2010). A person enters or remains unlawfully in a structure if "the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged." A.R.S. § 13-1501(2) (2010). A nonresidential structure is "any structure other than a residential structure and includes a retail establishment." *Id.* § 13-1501(10). A "structure" is broadly defined and includes, *inter alia*, "any building . . . or place with sides and a floor that is separately securable from any other structure attached to it and that is used for lodging, business, transportation, recreation or storage." *Id.* § 13-1501(12).

¶11        The evidence established the first element of the offense. Discount Tire's shed is part of a nonresidential retail business. It was detached from the tire store, had sides and doors that were separately secured, and was used to store tires. *See, e.g.*, *State v. Gill*, 235 Ariz. 418, 419-21, ¶¶ 5-12, 333 P.3d 36, 38-39 (App. 2014) (finding that a mailbox meets the statutory definition of non-residential structure). Bithell entered the shed. He also admits that he did not personally have permission to do so, and the store's manager testified that neither Bithell nor the unidentified "Bob Shea" had permission to enter the shed and/or to take tires from it. Thus, because Bithell was not "licensed, authorized or otherwise privileged," A.R.S. § 13-1501(2), to enter or remain in the shed, his presence there was unlawful.

¶12        Bithell challenges the sufficiency of the evidence supporting the second element by arguing that the evidence regarding his intent did not meet the requisite standard of proof—beyond a reasonable doubt. He avers that, at best, the presented evidence made the question of his intent ambiguous and speculative. We disagree.

¶13        "Criminal intent, being a state of mind, is shown by circumstantial evidence." *State v. Routhier*, 137 Ariz. 90, 99, 669 P.2d 68, 77 (1983) (citation omitted); *see also State v. Ramos*, 133 Ariz. 4, 6, 648 P.2d 119, 121 (1982) (citations omitted) ("Intent to commit theft or any felony can be shown by circumstantial evidence."); *State v. Fulminante*, 193 Ariz. 485, 494, ¶ 27, 975 P.2d 75, 84 (1999) (stating that the defendant's "false, misleading, and inconsistent statements to police," and others, demonstrated the defendant's "consciousness of guilt"). The reasonable doubt standard requires evidence sufficient to satisfy each element of the crime and to convince a factfinder of the defendant's guilt "with utmost certainty." *In re Winship*, 397 U.S. 358, 364 (1970).

¶14          Here, Lieutenant Mitchell saw Bithell throwing tires from the shed into his truck. As to this fact, Bithell's statements to the officers on the day of his arrest and his statements at trial are clearly inconsistent. It was therefore up to the jury to weigh his credibility, and draw out a conclusion as to whether Bithell was returning tires to the shed, taking tires from the shed, or taking tires from the shed that he had accidentally thrown in the shed. *See State v. Clemons*, 110 Ariz. 555, 556-57, 521 P.2d 987, 988-89 (1974) (counting cases) ("No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury."). Bithell's conflicting statements, and his statement that "he was [just] trying to make a living," were sufficient to compel the jury to reasonably believe, beyond a reasonable doubt, that Bithell had taken tires from the shed and to reject his story that he was removing tires he had accidentally thrown in the shed. The jury could have also reasonably concluded that the absence of "Bob Shea" at the scene of the incident or at trial to corroborate Bithell's statements, undermined his argument of lacking intent to commit theft merely because he believed "Bob Shea" had permission to enter the shed to take tires. *See id.* at 557, 521 P.2d at 989 (stating that because he is an interested witness, a jury is "not compelled to accept [an accused's] story or believe his testimony"). We conclude the evidence of Bithell's intent was sufficient to support the jury's verdict.

## II.     Lack of Mistake of Fact Defense Jury Instruction

¶15          Bithell also asserts that the trial court should have *sua sponte* instructed the jury on a mistake-of-fact defense and that its failure to do so amounts to reversible error. Because Bithell did not raise the issue in the trial court, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005). We find that even if Bithell was entitled to a mistake-of-fact defense instruction, the court's failure to so instruct does not constitute fundamental error.

¶16          A defendant is entitled to relief under fundamental error review only where an error exists, that error reaches the foundation of the case, takes away a right essential to the defendant's defense or where because of the error, the defendant was deprived of a fair trial and the defendant shows he was prejudiced by the error. *State v. James*, 231 Ariz. 490, 493, ¶¶ 11, 13, 297 P.3d 182, 185 (App. 2013) (citations omitted).

¶17          Bithell argues that because he testified to believing that he had derivative permission, through "Bob Shea," to be at the shed, and that belief was at "the heart of his defense," he was entitled to have the court instruct

the jury regarding the mistake-of-fact defense. He claims that he was prejudiced by the court's failure to give the instruction, which he did not request, because the mistake negated the offense's intent element.

**¶18** Given the evidence before the jury, in deciding to convict Bithell of burglary instead of acquitting him, the jury necessarily had to decide whether they believed Bithell had the intent to commit a theft in entering the shed. Further, Bithell was able to proffer the defense of his alleged mistaken belief, in spite of the lack of instruction. Therefore, it would at best be speculative for this court to conclude that the failure to instruct the jury on the mistake-of-fact defense fundamentally prejudiced him. *See, e.g., State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13, 314 P.3d 1282, 1286 (App. 2013) (quoting *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006)) (stating that under fundamental error review, a defendant "must affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry his burden").

### III. Lack of Criminal Trespass Jury Instruction

**¶19** Although Bithell did not request a criminal trespass jury instruction, he contends that the trial court committed fundamental error by not giving a jury instruction for trespass as a lesser-included offense of third-degree burglary. The state argues that, as a preliminary matter, the trial court did not err because: (1) the court had no duty to *sua sponte* instruct on "lesser" offenses; and (2) criminal trespass is not a lesser-included offense of third-degree burglary. We review for fundamental error, *see Henderson*, 210 Ariz. at 567, ¶¶ 19-20, 115 P.3d at 607, and find no relief for Bithell.

**¶20** The Arizona Supreme Court has held that "[c]riminal trespass is not necessarily a lesser included offense of burglary." *State v. Malloy*, 131 Ariz. 125, 131, 639 P.2d 315, 321 (1981); *see also State v. Kozan*, 146 Ariz. 427, 429, 706 P.2d 753, 755 (App. 1985) (citations omitted) (noting that "Arizona courts have consistently held that criminal trespass is not a lesser-included offense of burglary," and that "[t]he legislative amendment [of the definition of "knowingly"] has not changed the rule in *State v. Malloy*"); *State v. Newnom*, 208 Ariz. 507, 508, ¶ 8, 95 P.3d 950, 951 (App. 2004) (stating that the Court of Appeals cannot disregard the decisions of our supreme court).

**¶21** Moreover, a trial court's failure to give an instruction as to a lesser-included offense, which the parties also failed to request, is not fundamental error. *See, e.g., State v. Engram*, 171 Ariz. 363, 367, 831 P.2d 362,

368 (App. 1991) (supp. op); *see also State v. Gipson*, 229 Ariz. 484, 487, 277 P.3d 189, 192 (2012) (quoting *Walker v. United States*, 418 F.2d 1116, 1119 (D.C. Cir. 1969)) ("In general the trial judge should withhold charging on lesser included offense[s] unless one of the parties requests it, since that charge is not inevitably required in our trials, but is an issue best resolved, in our adversary system, by permitting counsel to decide on tactics.")

**¶22**     Given these considerations, we conclude the trial court's failure to *sua sponte* provide a criminal trespass instruction in this matter cannot support a finding of reversible error.

## CONCLUSION

**¶23**     We affirm Bithell's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA