NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER MICHAEL SNOW, *Appellant.*

No. 1 CA-CR 21-0586
FILED 9-15-2022

Appeal from the Superior Court in Mohave County
S8015CR202001418
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew Stuart Reilly
*Counsel for Appellee*

Randall J. Craig, Fountain Hills
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

**T H U M M A**, Judge:

**¶1**         Defendant Christopher Michael Snow appeals his burglary conviction and resulting prison sentence. Because Snow has shown no reversible error, his conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Around sunset one day in December 2020, law enforcement responded to a burglary in progress at a home in a remote part of Mohave County. The homeowner called law enforcement after seeing individuals in the home, without permission, over a live security video. A deputy, the first officer to arrive, saw Snow and his truck blocking the road near the entrance to the home. The deputy detained Snow and, while waiting for backup, advised him of his rights under *Arizona v. Miranda*, 384 U.S. 436 (1966). The deputy had a body-worn camera that recorded the entire interaction. Three more law enforcement officers arrived and, after entering the home, found a man and a woman inside.

**¶3**         Snow was charged with burglary in the second degree, a Class 3 felony; was found guilty as charged after a two-day trial in September 2021; and, given his criminal history, was sentenced to a greater than presumptive 12-year prison term. As relevant here, during opening statements the prosecutor told the jury they would "get a chance to see exactly what [the officer] did, or at least portions of some of the things that [the officer] did. Watching two hours of video, I don't want to waste your time doing that."

**¶4**         During direct examination of the homeowner, the prosecutor said, "[t]o be clear, the camera's on; it's not always recording. Doesn't begin recording until the sensor is tripped?" and, without objection, the homeowner answered "[c]orrect." During direct examination of a deputy, the prosecutor asked, "[y]ou take off north, correct?" and, without objection, the deputy answered, "[t]hat's correct." Twice during questioning of the homeowner and twice of the deputy, after they answered, the prosecutor said, "[v]ery good." Several times, the prosecutor said "I understand" or "[r]ight" after a witness answered.

**¶5**         This court has jurisdiction over Snow's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona

Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2022).[1]

## DISCUSSION

**¶6** Snow argues the prosecutor committed reversible error by vouching during opening statement and while examining witnesses as noted above. At trial, Snow failed to timely object. "When a defendant fails to object to trial error, he forfeits appellate relief absent a showing of fundamental error." *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018). An error is fundamental if it "goes to the foundation of the defendant's case, takes away a right essential to the defense, or is of such magnitude that it denied the defendant a fair trial." *Id.* Snow "bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013) (citations omitted).

**¶7** "Two general forms of prosecutorial vouching exist: (1) when 'the prosecutor places the prestige of the government behind its witness;' or (2) when 'the prosecutor suggests that information not presented to the jury supports the witness's testimony.'" *State v. Acuna Valenzuela*, 245 Ariz. 197, 217 ¶ 75 (2018) (citation omitted). In addition, "a lawyer is prohibited from asserting personal knowledge of facts in issue before the tribunal unless he testifies as a witness." *State v. Bible*, 175 Ariz. 549, 601 (1993) (citation omitted).

**¶8** Snow first argues the prosecutor vouched during his opening statement by informing the jury that they would not need to see the entire body camera footage. Snow argues "this implied whatever the officer testified to would be enough for a conviction. This also implied [Snow's] whole statement to [the deputy] would be unnecessary to hear and any further statements including testimony under oath during the trial would be unnecessary."

**¶9** In context, the prosecutor's statement told the jury that portions of the video would be played during trial. Snow did not object, did not claim the portion of the video played was misleading and did not claim the jury should watch the entire two-hour video. Nor does he support his speculation that the statement addressed the need to hear Snow's other statements or that the portions of the video played meant sworn testimony

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

was not needed at trial. The superior court also instructed the jury that a lawyer's statements are not evidence and to "determine what the facts in this case are from the evidence produced in court," a directive this court presumes the jury followed. *State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006).

¶10      Nor has Snow supported his argument that the prosecutor's comments during opening statements "had a chilling effect on [Snow's] decision to testify" and that he "chose not to testify as a result." After the State rested and the court denied Snow's motion for judgment of acquittal, the court asked if the defense was presenting any evidence or testimony. Defense counsel responded "[m]y client is not going to testify," adding he would call a codefendant to testify. Snow has failed to show the prosecutor's opening statement had any impact on his decision not to testify or otherwise affected his right to a fair trial. *See State v. Dumaine*, 162 Ariz. 392, 403 (1989).

¶11      Snow next claims that the prosecutor's responses to questions, such as "[t]hat's correct," "[v]ery good," "I understand" or "[r]ight" were impermissible vouching constituting prosecutorial misconduct. Again, however, the court instructed the jury to not consider attorney's statements as evidence. *Cf. State v. Payne*, 233 Ariz. 484, 512 (2013) (even when vouching occurs, noting the court may "cure the error by instructing the jury not to consider the attorney's arguments as evidence"). Although it would have been better if these "play-by-play" statements had not been made, Snow has not shown they constitute fundamental error resulting in prejudice. *See State v. Vargas*, 249 Ariz. 186, 190 ¶¶ 12–14 (2020). Nor has Snow shown the prosecutor's occasional use of leading questions during direct examination was error. *See* Ariz. R. Evid. 611(c) ("Leading questions should not be used on direct examination except as necessary to develop the witness's testimony.").

**CONCLUSION**

¶12      Snow's conviction and resulting sentence are affirmed.

