IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GERARDO NEVAREZ RIOS, *Appellant.*

No. 1 CA-CR 23-0273

FILED 08-08-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-002331-001
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Apfel Law Group, Phoenix
By Seth Apfel
*Counsel for Appellant*

**OPINION**

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

**T H U M M A**, Judge:

¶1          Defendant Gerardo Rios appeals from his convictions and resulting sentences for drive-by shooting, aggravated assault and aggravated harassment. Rios argues the superior court erred in (1) denying his motion for a mistrial when his ankle monitor beeped during trial; (2) giving an incomplete aggravated harassment jury instruction; (3) precluding evidence of a prior incident; and (4) failing to provide the jury with a limiting instruction for other act evidence. Because Rios has shown no reversible error, his convictions and resulting sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2          Rios and S.R. were involved in a romantic relationship that did not last long and did not end well. On January 22, 2020, S.R. filed a petition for an order of protection against Rios in Glendale City Court. S.R.'s petition alleged multiple instances of unwanted contact, including where Rios "pointed a gun at [S.R.] while driving." S.R. sought an order of protection on behalf of herself and her sister. The City Court issued the order prohibiting Rios from having direct contact with S.R. or her sister, listing S.R.'s residence, workplace, and school as protected locations. The order also prohibited Rios from possessing, receiving, or purchasing firearms. Rios was served with the order of protection on January 24, 2020.

¶3          Five days later, while out with friends, S.R. saw Rios. Worried about how Rios found her, S.R. checked her car and found an electronic tracking device taped to the undercarriage. S.R. called the Phoenix Police Department, which removed and impounded the tracker.

¶4          On March 2, 2020, S.R. was driving on the freeway with her sister and again saw Rios driving nearby. She exited the freeway and made evasive maneuvers to try to lose him. Rios, however, continued to follow her. Trial testimony would reveal that, as Rios approached, S.R. saw his face, saw no passengers in Rios' car, and heard a gunshot as his car passed. S.R. pulled over, saw a front tire on her car was deflating, and called the police. A responding officer removed a bullet from the tire.

¶5          Later that night, the police searched Rios' house and detained him. Police recovered a "tracking case" that matched the tracking device found on S.R.'s car in January 2020 and a Winchester .38 handgun with ammunition. Rios later admitted to tracking S.R. "for a couple [of] days" and shooting at her car.

¶6          Rios was charged with drive-by shooting, a Class 2 dangerous felony; two counts of aggravated assault, Class 3 dangerous felonies; and one count of aggravated harassment, a Class 6 non-dangerous felony. The

State filed a pretrial motion seeking to admit other act evidence at trial, which the superior court granted. The record also references a motion in limine by the State seeking to prohibit Rios from introducing evidence about a previous drive-by shooting he was involved in with an undisclosed male. That motion, however, is not in the appellate record. The court deferred ruling on that motion, stating "it's a remote incident if it did happen and would not give rise to any sort of justification, self-defense type issue on the statements that I know so far. So, I'm inclined to grant it, but I'll give you time to think about it and we can take it up at a later date."

¶7          At a five-day trial in April 2023, S.R., her sister, and police officers testified in the State's case in chief. After the State rested, Rios elected to testify in his own defense. Rios testified that "he notice[d] that a car was following" him and that he began making "quick" turns. Rios admitted to having a gun but claimed he only "shot at the ground." Rios said he saw a gun in the other car (which S.R. was driving) and fired his gun because "[he] thought [the other person] was going to try to take [his] life first." Rios later denied shooting at S.R.'s car. Rios also claimed that he never admitted to tracking S.R. but "admitted to tracking her friend."

¶8          Rios repeatedly referenced the prior shooting incident that was the subject of the State's motion in limine. Among other things, Rios testified "that's when I [saw] the guy I had [an] issue with before;" "I thought he was going to shoot me again . . . or shoot at me again;" and "after the incident that happened to me, I would always have [a gun] right [t]here on my lap." The court sustained the State's objections to this testimony, which defense counsel did not oppose.

¶9          At the end of his testimony, two jurors submitted questions for Rios about the prior incident: (1) "Why isn't [the] issue with [the] other person relevant? Sounds like it is. Why can't he testify about that?" and (2) "Who was the person you were afraid of [and what is] their relationship to you/S.R?" In response, the superior court referred the jury to the preliminary instructions regarding legal standards and allowed Rios to give a brief description of his and S.R.'s relationship to the individual involved in the prior incident. Given Rios' testimony about aspects of the prior incident, the court later gave a self-defense justification jury instruction over the State's objection.

¶10          Rios had been released pretrial on an electronic ankle monitor used to track his location. Rios was responsible for charging the ankle monitor. During his cross-examination, Rios' ankle monitor apparently lost its charge and began to beep. The judge adjourned the trial, the jury left the

courtroom and the court denied Rios' motion for a mistrial. Upon resuming trial, the court directed the jury "to disregard any beeping or audible notifications that you may have heard," adding that the beeping "and/or audible notification has nothing to do with any facts or issues that you are going to decide in this case, and you should not let it affect your deliberations."

¶11        After considering the evidence and argument, the jury found Rios guilty as charged. The court then sentenced Rios to concurrent presumptive prison terms of: (1) 10.5 years for drive-by shooting; (2) 7.5 years for each aggravated assault; and (3) 1 year for aggravated harassment. The court properly awarded Rios 69 days of presentence incarceration credit. This court has jurisdiction over Rios' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Ariz. Rev. Stat. (A.R.S.) §§ 12-120.21(A)(1), 13-4031 and 13-4033(A) (2024).[1]

## DISCUSSION

¶12        Rios argues the superior court erred by (1) denying his motion for mistrial based on the ankle monitor beeping; (2) improperly instructing the jury on aggravated harassment; (3) not allowing him to offer evidence of the prior incident and (4) failing to provide a limiting instruction on other act evidence. The court addresses the arguments in turn.

I.      **Rios Has Not Shown the Superior Court Abused Its Discretion in Denying His Motion for Mistrial.**

¶13        Rios argues the superior court erred in denying his motion for mistrial after "his ankle monitor beeped and sounded an audible computerized warning during his testimony." "'[T]he granting of a mistrial is an extreme remedy, it may and should be declared only as a result of some occurrence . . . of such a character that it is apparent to the court that because of it one of the parties cannot have a fair trial, or where further proceedings would be productive of great hardship or manifest injustice.'" *State v. Kleinman*, 250 Ariz. 362, 365 ¶ 12 (App. 2020) (citation omitted).

¶14        It is unclear precisely what happened in the courtroom when the ankle monitor beeped. The beeping started during Rios' cross-examination after he had failed to recharge the battery for the ankle monitor. The court promptly adjourned the trial, and the jury left the courtroom. Defense counsel stated that a "beeping" and "audible warning"

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

was heard throughout the courtroom, adding that "at least a few of [the jurors] looked down at [Rios'] ankle." The State responded that Rios was wearing his ankle monitor "outside of his pants. He walked right up to the witness stand, and the jurors would have had an opportunity to see it at that point, or any other point." Although denying Rios' motion for mistrial, the court instructed the jury to disregard the beeping as noted above.

¶15　　　On this record, it is unclear whether the jury understood the beeping came from Rios' ankle monitor. Even if the jury connected the beeping with the ankle monitor, the jury may have already seen the ankle monitor given that Rios wore it outside of his pants (as opposed to hidden underneath his pants and, perhaps, sock). Rios has offered no authority for the proposition that his unilateral decision to wear the ankle monitor so that the jury could see it required the court to grant his ankle monitor-related motion for a mistrial. Similarly, he has not shown that his failure to properly charge the ankle monitor required the court to grant a mistrial.

¶16　　　The parties have not cited, and this court has not found, any Arizona case discussing a motion for mistrial based on a jury's awareness of a defendant's ankle monitor. Absent "special circumstances, including security concerns," "courts cannot routinely place defendants in shackles or other physical restraints visible to the jury." *Deck v. Missouri*, 544 U.S. 622, 633 (2005). That prohibition reflects that "[v]isible shackling" (1) undermines the presumptions of innocence and the fairness of the factfinding process; (2) can interfere with the right to counsel; and (3) would undermine the dignity and decorum of judicial proceedings. *Id.* at 630-31.

¶17　　　Rios argues that his ankle monitor was a "physical restraint" under *Deck*, conveying "the notion that a defendant is considered so dangerous that his/her whereabouts and activities must be constantly monitored for security purposes even in the community." Because no "special circumstances" were shown, Rios argues *Deck* requires reversal. *Deck*, however, is distinguishable. In that case, the jury saw the defendant "shackled with leg irons, handcuffs, and a belly chain," which the court held "undermines the presumption of innocence and the related fairness of the factfinding process." *Deck*, 544 U.S. at 622, 630. Here, by contrast, the only arguable "physical restraint" was an ankle monitor, which (1) Rios elected to wear outside of his pants so that the jury could see it and (2) began beeping during the trial because Rios had failed to charge it adequately.

**¶18** The ankle monitor beeping in this case does not implicate the concerns expressed in *Deck* or, as Rios argues, convey the notion that he was dangerous.[2] Given these differences, *Deck*'s rule concerning shackles does not apply to ankle monitors. *See United States v. Wiley*, 103 F.4th 565, 571 (9th Cir. 2024) ("the shackles in *Deck* and the ankle monitor in this case are two very different things, and ankle monitors are not entitled to *Deck*'s presumption of prejudice"). Nor has Rios shown actual prejudice due to the jury seeing or hearing the ankle monitor. *Cf. State v. Payne*, 233 Ariz. 484, 505 ¶ 65 (2013) (even where there was a "brief inadvertent juror exposure to the defendant in shackles outside the courtroom . . . [defendant] must therefore show actual prejudice); *State v. Johnson*, 147 Ariz. 395, 399 (1985) (noting that when "several jurors inadvertently saw the defendant in custody while on the way to the courtroom" the relevant question was "whether the defendant was prejudiced by what the jury saw").

**¶19** Rios argues the court's curative instruction was "inadequate" since "nothing in the instruction told the jury to disregard the fact that Rios was wearing an ankle monitor" and it failed "to ensure that the jury's awareness that Rios was required to wear the ankle monitor did not impact the presumption of innocence." Rios, however, did not request such an instruction. Moreover, it was Rios himself, by wearing his ankle monitor outside his pants, who appears to have called the jury's attention to the ankle monitor. Rios has shown no error with the curative instruction, which jurors are presumed to have followed. *See State v. Newell*, 212 Ariz. 389, 403 ¶ 69 (2006). For these reasons, Rios has shown no unfair prejudice in the jury learning of the ankle monitor or hearing it beeping.

## II. Rios Has Not Shown the Jury Instruction on Aggravated Harassment Was Fundamental Error Resulting in Prejudice.

**¶20** Rios argues the court erred in failing to instruct the jury on the definition of "harass" in the Count 4 aggravated harassment jury instructions, based on Rios' violating the order of protection. The court instructed the jury as follows:

> The crime of "Aggravated Harassment" requires
> proof that the defendant, with intent to harass or

---

[2] As the State notes, "'[m]atters of courtroom security are left to the discretion of the trial court.'" *State v. Dixon*, 226 Ariz. 545, 551 ¶ 22 (2011) (quoting *State v. Davolt*, 207 Ariz. 191, 211 ¶ 84 (2004)). The record, however, does not show that the ankle monitor was used for courtroom security, as opposed to a condition of pretrial release.

knowing that the defendant was harassing another person:

1. did surveil or caused another person to surveil a person for no legitimate purpose; and

2. was done after a court had issued an order of protection or injunction against harassment against the defendant in [S.R.'s] favor and the order of protection or injunction against harassment had been served and was still valid.

Rios argues the instruction (1) "failed to define the term 'harass,'" leaving the jury "to guess at the meaning of the term or apply whatever definition they saw fit;" and (2) "the instruction failed to identify what a defendant has to do after a court issues an order of protection."

**¶21**        Rios did not object to the jury instruction in the superior court, meaning he must now show fundamental error resulting in prejudice. *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018). Satisfying that burden requires Rios to prove error that is fundamental resulting in prejudice or that "was so egregious that he could not possibly have received a fair trial." *Id*. at 142 ¶ 21. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the [superior] court." *State v. Zaragoza*, 135 Ariz. 63, 66 (1985).

**¶22**        Stated simply, a person commits aggravated harassment by (1) committing harassment in one of the alternative manners specified in A.R.S. § 13-2921 and (2) at the time of that harassment, one of the alternative aggravating circumstances specified in A.R.S. § 13-2921.01 is shown. *See* A.R.S. § 13-2921.01. Here, the predicate harassment was when Rios "surveils or causes a person to surveil another person," A.R.S. § 13-2921(A)(3), and the aggravating circumstance was that he did so when an order of protection, properly issued by a court and served on him, was valid, A.R.S. § 13-2921.01(A)(1)(a).

**¶23**        The jury instruction should have included the statutory definition of "harass." *See* A.R.S. § 13-2921(E) ("'[H]arass' means conduct that is directed to a specific person and that would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed and the conduct in fact seriously alarms, annoys, humiliates or mentally distresses the person."). But even presuming that this omission was error that went to the foundation of the case, Rios has failed to show resulting prejudice. *See Escalante*, 245 Ariz. at 141 ¶ 18, 142 ¶ 21.

¶24        Resulting prejudice is a fact-intensive inquiry, the outcome of which will "depend[] upon the type of error that occurred and the facts of a particular case." *State v. James*, 231 Ariz. 490, 494 ¶ 15 (App. 2013). To prove prejudice, Rios must show that a reasonable, properly instructed jury "could have reached a different result." *Id.* In making that assessment, the court considers the parties' theories of the case, the evidence received at trial and the arguments to the jury. *Id.* On the record presented, Rios has failed to show resulting prejudice.

¶25        The State's theory was that Rios surveilled S.R., intentionally violating the order of protection S.R. had obtained. The State's opening statement made that plain:

> [S.R.] got a restraining order. That order will be shown to you. That order was served on [Rios]. That means a police officer went to him, placed a legal document in his hands that said in no uncertain terms leave her alone. Do not contact her. Do not come near her. Do not contact her through third-parties. And what did he do? Ladies and gentlemen, the evidence will show he did not do that. He did not leave her alone.

Rios' theory was self-defense, arguing that he fired the gun at S.R.'s car out of fear for his safety. In his opening statement, defense counsel did not mention "harassment," nor did he dispute that Rios' actions constituted harassment. Rios' defense did not implicate the definition of harass.

¶26        The trial evidence included that S.R. obtained an order of protection in January 2020 after Rios continued to contact her through "different phone numbers" and "emails and messages through Facebook." Days after Rios was served with the order of protection, S.R. "found a tracker" underneath her car, which the police removed and impounded. And S.R. and her sister testified to the March 2, 2020, stalking and drive-by shooting, which occurred after service of the order of protection that remained valid. This evidence is consistent with the State's theory that Rios intentionally violated the order of protection by continuously contacting S.R. and attempting to find her location.

¶27        While testifying, Rios never challenged or disputed that he harassed S.R., focusing instead on the March 2, 2020, shooting incident, testifying why he believed he was at risk, stating, "I thought [the person in the other car] was going to try to take my life first." Rios admitted to being

aware of the order of protection against him. Rios stated that he was not attempting to track S.R. but, rather, was "looking for her friend's location" and admitted to having a tracking device. At no time did Rios or his counsel seek to argue or solicit testimony that Rios' actions did not constitute harassment.

¶28 Closing arguments similarly did not dispute that Rios harassed S.R. The State argued the case was about Rios violating his protective order, asserting Rios admitted there was an order of protection against him, yet "he still chased her; and . . . pointed a gun at her." The State added there was "no legitimate purpose to surveil [S.R.'s] actions. This was done after a court had issued an order of protection or injunction against harassment against the defendant, in [S.R's] favor, and that the order of protection was served and is still valid." Rios' counsel argued in closing that the issue was whether Rios violated the protective order. "The State has charged my client with . . . the violation of the order of protection that is alleged to have occurred." Defense counsel did not attempt to argue that Rios did not harass S.R., nor did he argue that the State had not shown harassment.

¶29 On these facts, Rios has failed to show resulting prejudice. *See Escalante*, 245 Ariz. at 141 ¶ 18; *James*, 231 Ariz. at 494 ¶ 15. Accordingly, even presuming the failure to instruct the jury on the definition of "harass" constituted error that was fundamental, Rios has shown no reversible error.

### III. Rios Has Not Shown the Superior Court Erred in Precluding Evidence of the Prior Incident.

¶30 Rios argues the superior court erred when it precluded evidence that he was involved in a prior shooting incident with "the same male he saw in the car coming towards him on the day he allegedly fired the gun leading to the charges" in this case. *See State v. McGill*, 213 Ariz. 147, 154 ¶ 30 (2006) (reviewing rulings on the admissibility of evidence for an abuse of discretion). The court did not make a definitive pretrial ruling on this apparent motion in limine (which is not in the record on appeal), concluding instead that "we can take it up at a later date."

¶31 During his testimony, Rios repeatedly referenced the prior shooting incident that was the target of this apparent motion in limine. Rios testified that he "[saw] the guy [he] had an issue with" driving the car on March 2, 2020; he "thought [the guy] was going to shoot [him] again" and that "after the [prior] incident," Rios "would always have [a gun] right there on [his] lap." The State objected to the testimony every time Rios

referred to the prior shooting, which the court sustained. Defense counsel did not oppose any of the State's objections about the admissibility of such testimony, thus waiving any argument on appeal that the rulings sustaining the objections were error. *Cf. State v. Briggs*, 112 Ariz. 379, 382 (1975) ("A failure to object to incompetent or inadmissible evidence constitutes a waiver to question the same matter on appeal.").

¶32 Nor has Rios shown any reversible error. Regardless of the court's ruling on the motion in limine, Rios managed to convey that there was a prior drive-by shooting that made him fear for his life. Rios provided so much testimony related to this prior event that the court added a self-defense justification instruction to the final jury instructions, despite its absence in the preliminary instructions and the fact that defense counsel never made the State aware that it would seek such a defense. The court stated, "[d]efense is entitled to any reasonable instruction based on the facts presented, which is the defendant's testimony. And it seems to be more pitfalls in not giving it than giving it. So I'm inclined to give the justification, self-defense instruction . . . ." Thus, presumably in an abundance of caution, the court gave the self-defense instruction over the State's objection.

¶33 Moreover, defense counsel failed to provide any offer of proof describing the testimony Rios would have provided if allowed to testify to this incident fully. *Cf.* Ariz. R. Evid. 103(a)(2) (discussing required showing for an offer of proof). Based on the record and the testimony given, Rios described the majority of the prior incident and received a self-defense jury instruction. On this record, Rios has not shown that the superior court committed reversible error in its rulings precluding some testimony about the prior incident.

## IV. Rios Has Not Shown the Superior Court Erred by Not Giving a Limiting Instruction.

¶34 Finally, Rios argues the superior court erred because it failed to give a limiting instruction on the order of protection granted to S.R., which the court admitted as other act evidence. *See* Ariz. R. Evid. 404(b). The issue is whether the superior court committed reversible error by failing to give a limiting instruction when admitting that evidence. *See* Ariz. R. Evid. 105.

¶35 The other act evidence was, as Rule 404(b) required, admitted for a limited purpose. Accordingly, "*on timely request*" of a party, the court "must restrict the evidence to its proper scope and instruct the jury accordingly." Ariz. R. Evid. 105 (emphasis added). Rios, however, made no

such request at the time the evidence was admitted or when discussing final jury instructions. Although Rios is correct in arguing on appeal that his trial attorney reserved the right to request a limiting instruction, his attorney never made such a request. On this record, Rios has failed to show that the superior court committed reversible error in failing to sua sponte provide a Rule 105 limiting instruction. *See State. v. Hyde*, 186 Ariz. 252, 278 (1996); *State v. Atwood*, 171 Ariz. 576, 629 (1992); *see also State v. Taylor*, 127 Ariz. 527, 530 (1980) ("if a defendant wants an instruction limiting the effect of certain evidence he must request it, and the failure of the trial court to so instruct is not error in the absence of a request therefor").

## CONCLUSION

¶**36**     Rios' convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AGFV